Citation Nr: 1703143 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 09-32 556 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Winston-Salem, North Carolina


THE ISSUE

Entitlement to an initial disability rating (or evaluation) in excess of 10 percent for hypothyroidism.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran (Appellant)


ATTORNEY FOR THE BOARD

E. Choi, Associate Counsel
INTRODUCTION

The Veteran, who is the appellant, served on active duty from May 1987 to May 2007.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision by the RO in Winston-Salem, North Carolina, which, in pertinent part, granted service connection for hypothyroidism and assigned an initial 10 percent disability rating, effective June 1, 2007 (the day following service separation).

In January 2010, the Veteran testified at a RO hearing held before a Decision Review Officer (DRO). A transcript of the hearing has been associated with the record.

In a February 2013 decision, the Board denied an initial disability rating in excess of 10 percent for hypothyroidism. The Veteran appealed the February 2013 Board decision on the issue of a higher initial rating for hypothyroidism to the United States Court of Appeals for Veterans Claims (Court). The Board's February 2013 decision was partially vacated pursuant to an August 2013 Joint Motion for Partial Remand on the basis that a new VA compensation examination was warranted to assess the current severity of the hypothyroidism disability. 

In January 2014, the Board remanded the issue of entitlement to an initial disability rating in excess of 10 percent for hypothyroidism for another VA examination to help ascertain the current nature and severity of the service-connected hypothyroidism, and for subsequent readjudication of the appeal. After reviewing the ensuing March 2014 VA examination report, the Board remanded the matter again in September 2014 to attempt to obtain private treatment records related to the service-connected hypothyroidism.

In an April 2015 decision, the Board denied an initial disability rating in excess of 10 percent for hypothyroidism. The Veteran appealed the April 2015 Board decision to the Court. Pursuant to a November 2015 Joint Motion for Remand (JMR), the Court vacated and remanded the April 2015 Board decision. The November 2015 JMR instructed the Board to consider whether the hypothyroidism symptoms more nearly approximated the criteria for a higher rating pursuant to 38 C.F.R. § 4.7 (2015).

In a January 2016 decision, the Board once again denied an initial disability rating in excess of 10 percent for hypothyroidism. The Veteran appealed the January 2016 Board decision to the Court, and pursuant to an August 2016 JMR, the Court vacated and remanded the January 2016 Board decision. The August 2016 JMR instructed the Board to further address the symptoms listed in an undated letter from the Veteran's private physician received by VA in July 2014 (referred to in the JMR as a 2014 private medical examination report). The JMR also instructed the Board to consider the hypothyroidism diagnostic criteria under 38 C.F.R. § 4.119, Diagnostic Code (DC) 7903 (2016), consistent with the Court's ruling in Tatum v. Shinseki, 23 Vet. App. 152 (2009) and in consideration of 38 C.F.R. §§ 4.7 and 4.21 (2016).

The Board has reviewed the electronic files on "Virtual VA" and the Veterans Benefits Management System (VBMS) to ensure a complete review of the evidence in this case.


FINDING OF FACT

For the entire initial rating period from June 1, 2007, the Veteran's hypothyroidism has been manifested by continuous medication required for control, fatigability, and constipation.


CONCLUSION OF LAW

Resolving reasonable doubt in favor of the Veteran, for the initial rating period from June 1, 2007, the criteria for a disability rating of 30 percent, but no higher, for hypothyroidism have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1-4.7, 4.119, Diagnostic Code 7903 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim and of the relative duties of VA and the claimant for procuring that evidence. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b) (2016). Such notice should also address VA's practices in assigning disability ratings and effective dates for those ratings. See Dingess v. Nicholson, 19 Vet. App. 473 (2006). Notice should be provided to a claimant before the Agency of Original Jurisdiction's (AOJ) initial unfavorable decision on a claim. 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004); see also Mayfield v. Nicholson, 19 Vet. App. 103, 110 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

As the instant appeal arises from disagreement with the initial disability rating of 10 percent assigned following the grant of service connection for hypothyroidism, no additional notice is required. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the Court have held that, once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); 38 C.F.R. § 3.159(b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date).

VA has also satisfied its duty to assist the Veteran in the development of the claim for an increased disability rating by fulfilling its duty to see and assist in the procurement of relevant records. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. Specifically, the information and evidence that have been associated with the claims file include the Veteran's service treatment records, post-service VA and private treatment records, VA examination reports, the January 2010 DRO hearing transcript, and lay statements from the Veteran and the Veteran's wife.

VA most recently examined the service-connected hypothyroidism disability in March 2014. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The March 2014 VA examiner interviewed the Veteran regarding past and present symptomatology, physically examined the Veteran, and provided clinical observations pertinent to the rating criteria. The March 2014 VA examiner indicated that the Veteran's primary care physician should evaluate the Veteran to provide an opinion on the underlying etiology of certain symptoms. VA obtained private medical records from the Veteran's private physicians and associated those treatment records with the claims file. An undated letter from the private physician treating the Veteran's hypothyroidism was received by VA in July 2014, after the March 2014 VA examination, and suggests an authorship date in 2013 or 2014 (noting "6-7 years of medical records" dating back to June 2007). The Board finds that the March 2014 VA examination report, when considered alongside the subsequently obtained private treatment records and private physician letter, is adequate to assist in determining the severity of the service-connected hypothyroidism, and that no further examination or opinion is needed. 

In light of the foregoing, the Board finds that VA has provided the Veteran with every opportunity to submit evidence and arguments in support of the claim, and to respond to VA notices. The Veteran and representative have not identified any outstanding evidence that needs to be obtained. For these reasons, the Board finds that VA has fulfilled the duties to notify and assist the Veteran.


Disability Ratings Law and Regulations

Disability ratings are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities. The percentage ratings are based on the average impairment of earning capacity and individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. In determining the disability rating, VA has a duty to acknowledge and consider all regulations that are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusions. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). If two ratings are potentially applicable, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3.

The Court has indicated that a distinction must be made between a veteran's dissatisfaction with original ratings and dissatisfaction with determinations on later filed claims for increased ratings. Fenderson v. West, 12 Vet. App. 119, 125-26 (1999). When a veteran is awarded service connection and assigned an initial disability rating, separate disability ratings may be assigned for separate periods of time in accordance with the facts found. Such separate disability ratings are known as staged ratings. Id.; 38 C.F.R. § 4.2.

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr, 21 Vet. App. at 312. The Federal Circuit has clarified that lay evidence can be competent and sufficient to establish a diagnosis or etiology when (1) a lay person is competent to identify a medical condition; (2) the lay person is reporting a contemporaneous medical diagnosis; or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

Generally, the degree of probative value which may be attributed to a medical professional's opinion accounts such factors as its thoroughness and degree of detail, and whether there was review of the Veteran's claims file. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Additional significant factors include whether the examining medical professional had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions because examiner failed to consider certain relevant information). As stated above, the Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert, 1 Vet. App. 49.

The Board has reviewed all the evidence, both lay and medical, in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by, or obtained on behalf of, the appellant be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Initial Rating for Hypothyroidism

Service connection for hypothyroidism was granted in a November 2007 rating decision that assigned an initial 10 percent disability rating, effective June 1, 2007 (the day after separation from service). 

For the entire initial rating period from June 1, 2007, the service-connected hypothyroidism has been rated at 10 percent disabling under 38 C.F.R. § 4.119, Diagnostic Code (DC) 7903. Under DC 7903, a 10 percent disability rating is warranted for fatigability or continuous medication required for control. A 30 percent disability rating is warranted for fatigability, constipation, and mental sluggishness. A 60 percent disability rating is warranted for muscular weakness, mental disturbance, and weight gain. A 100 percent disability rating is warranted for cold intolerance, muscular weakness, cardiovascular involvement, mental disturbance (dementia, slowing of thought, depression), bradycardia (less than 60 heart beats per minute), and sleepiness.

The Veteran has generally contended that an initial disability rating in excess of 10 percent is warranted based on symptoms including constipation, hair loss, fatigability, muscular aching and weakness, weight gain, emotional instability, and required use of medication to manage these symptoms.

After a review of all the evidence of record and resolving doubt in the Veteran's favor, the Board finds that, for the entire initial rating period from June 1, 2007, the service-connected hypothyroidism has been manifested by fatigability, continuous medication required for control, constipation, and weight gain, which more nearly approximates the criteria for a 30 percent disability rating under DC 7903. As discussed in more detail below, however, the evidence does not demonstrate that an initial rating in excess of 30 percent under DC 7903 is warranted for any period from June 1, 2007.

Service treatment records contain a July 2001 medical examination report where the examiner noted possible hypothyroidism after a thyroid stimulating hormone (TSH) test yielded an abnormally high result. On the corresponding Report of Medical History, the Veteran reported a recent gain or loss of weight, but denied symptoms of easy fatigability, shortness of breath, depression, or loss of memory.

An August 2004 service treatment record reflects the hypothyroidism was being managed with a 100 microgram (mcg.) dose of Synthroid per day, which began in November 2003. The Veteran reported self-prescribing increased doses of Synthroid from the prescribed 100 mcg. to 200 mcg. per day to address symptoms of constipation and feeling tired.

Service treatment records from July 2005 indicate the Veteran reported taking medication to manage the hypothyroidism, but was concerned about symptoms of fatigue and constipation. The Veteran denied any cardiovascular symptoms, depression or dyspnea. The medical examiner noted the Veteran appeared alert and oriented, that motor strength and sensation in the extremities were normal, and that the thyroid appeared normal and was not diffusely enlarged.

Service treatment records from July 2006 indicate the Veteran appeared oriented, was no longer tiring easily, and denied symptoms of chills. Similarly, service treatment records from August 2006 convey the Veteran had not experienced recent weight change, denied symptoms of constipation or depression, and did not exhibit any abnormal cardiovascular, pulmonary or gastrointestinal symptoms. Upon a physical examination, the examiner noted that the Veteran's sensory responses, reflexes and motor strength were all normal. 

Shortly thereafter, the Veteran underwent a service separation examination in February 2007, at which time the medical examiner noted the current hypothyroidism was under good control with Synthroid and not considered disabling. On the corresponding Report of Medical History, the Veteran denied symptoms of recent unexplained gain or loss of weight, shortness of breath, heart trouble, abnormal heartbeat, loss of memory, amnesia, or depression. 

VA conducted a Compensation and Pension (C&P) examination in August 2007 for several claimed disorders including hypothyroidism. The Veteran reported a worsening of hypothyroidism symptoms over the previous nine months to one year period (approximately September 2006 to December 2006). Specifically, the Veteran reported gaining 25 pounds during that nine month period. Upon a physical examination, the examiner recorded the Veteran's pulse was 70 beats per minute (BPM). In the August 2007 examination report, the VA examiner opined that the hypothyroidism did not have significant effects on the Veteran's occupation or daily activities, but suspected the hypothyroidism only had mild effects on endurance since the Veteran denied any symptoms related to heart issues. The VA examiner also indicated that the Veteran's medication regiment at the time was inappropriate and resulted in thyroid over-replacement. Further, the VA examiner opined that the thyroid over-replacement may have been playing a small role in the Veteran's reported symptoms of shortness of breath upon moderate exertion and daytime fatigue, but that appropriate thyroid replacement treatment may help.

The Veteran was provided another VA examination in September 2007. The September 2007 VA examination report shows the Veteran denied current symptoms associated with the hypothyroidism, and that daily treatment with Synthroid had good results with no side effects. The VA examiner noted that when the hypothyroidism was active, symptoms included excessive weight gain, emotional irritability, and memory loss. Upon physical examination, the VA examiner recorded the Veteran's pulse was 80 BPM. The Veteran's appearance was noted as normal, with no signs of malaise, and no evidence of generalized muscle weakness or muscle wasting. The VA examiner also noted that thyroid function studies were within normal limits with the exception of minimal elevation of the T4 index, which was still in the upper limits of normal.

Private treatment records from Dr. K. begin in December 2007, and show that the Veteran initially sought care from for degenerative disc disease in the lumbar spine, restless leg syndrome, insomnia, and moodiness. Upon physical examination, Dr. K. noted regular heart rhythm, clear lungs, and that the Veteran was awake, alert, and oriented. The Veteran reported treatment of the hypothyroidism with a daily dose of 200 mcg. of Synthroid, and requested the condition be reevaluated although no associated issues or symptoms were reported. The private treatment records do not reflect any complaints relating to the hypothyroidism until October 2009, when the Veteran complained of "blood sugar-type problems" that caused the Veteran to become irritable and break out in a cold sweat with headaches. The Veteran also reported a 60 lbs. weight gain "over the past couple of years" despite having trouble eating. During the October 2009 medical visit, Dr. K. discussed weight loss, weight maintenance, thyroid issues, and diabetes with the Veteran.

During the January 2010 DRO hearing, the Veteran testified to experiencing current hypothyroidism symptoms of fatigue, poor memory, emotional instability, depression, slowing of thought and constipation. The Veteran testified that some symptoms were ongoing, despite continuous treatment with medication. Specifically, the Veteran testified that when the medication wore off in the evening, he became irritable, fatigued, and depressed; the Veteran also testified to having daily symptoms of fatigue, mental sluggishness, constipation and irritability despite treatment with medication. Further, the Veteran testified that constipation would immediately manifest on occasions when he ran out of medication. Finally, the Veteran testified to discussing with Dr. K. the problem of the medication wearing out by evening time and that they were working on adjusting the dosage to address this issue.

Private medical records from Dr. K. from October 2010 show the Veteran's TSH results were normal and that symptoms of hypothyroidism were well controlled with Synthroid. Private medical records from March 2012 similarly show the Veteran's TSH results were normal, and that the Veteran appeared alert and oriented and exhibited full strength in all muscle groups. Finally, private medical records from Dr. K. through September 2013 show that the Veteran's prescription for Synthroid remained unchanged at 200 mcg. per day.

The Veteran was provided with another VA examination in March 2014. The Veteran reported the hypothyroidism was being managed with a daily 200 mcg. dose of Synthroid, which had been the prescribed dosage for the last two years. The Veteran also reported being diagnosed with low Vitamin D levels one year ago, but had not started taking Vitamin D supplements yet. The March 2014 VA examiner indicated the Veteran reported symptoms of fatigability, slowing of thought, and weight gain. Upon physical examination, the VA examiner noted the Veteran had a normal heart rate of 69 BPM, and found the neck was normal with no palpable thyroid enlargement or nodules. At the conclusion of the March 2014 VA examination, the VA examiner noted that laboratory results reflected the Veteran's thyroid function was normal, thus the VA examiner opined that it was less likely than not that symptoms of fatigue, weight gain, and mental slowness were caused by the hypothyroidism. The VA examiner further opined that there were likely other health factors involved in the Veteran's claimed fatigue, weight gain and mental slowness, and suggested the reported fatigue may be due to the Veteran's previously diagnosed sleep apnea.

In an undated letter received by VA in July 2014, Dr. K. recounted the Veteran's reported symptoms of fatigue, emotional instability, memory loss, depression, difficulty breathing, swelling, and weight gain during military service. While still describing the Veteran's time in military service, Dr. K. stated that the Veteran was ultimately diagnosed with Hashimoto's hypothyroidism, "which is significant in that this explains the history of symptoms that he complained." Dr. K. conveyed that the Veteran separated from active service in June 2007, and became a patient shortly thereafter. Further, Dr. K. provided that the Veteran was currently treating the hypothyroidism with a daily 200 mcg. dose of Synthroid, which "seem[ed] to control his symptomatology," although the Veteran had occasionally run out of medication for a short period of time. During such times, the Veteran reported experiencing lack of energy, emotional instability, memory loss, constipation, and gaining weight. When medication is resumed, the Veteran reported that the symptoms subside. Dr. K. provided this narrative illustrating a correlation between the appearance of certain symptoms and the lack of medication over short periods of time (noted to be as little as a week); however, Dr. K. did not directly attribute lack of energy, emotional instability, memory loss, constipation, or weight gain to the service-connected hypothyroidism.

Pursuant to the August 2016 JMR, the Board has been instructed to further address the undated letter discussed above (referred to in the August 2016 JMR as "the 2014 private medical examination report") from Dr. K. received by VA in July 2014 (July 2014 letter); specifically, Dr. K.'s assertion that the Veteran's diagnosis of Hashimoto's hypothyroidism in service was "significant in that [it] explains the history of symptoms that [the Veteran] complained" such as fatigue, emotional instability, memory loss, depression, difficulty breathing, swelling, and weight gain. The August 2016 JMR also instructed the Board to evaluate the Veteran's symptoms consistent with the Court's ruling in Tatum, 23 Vet. App. 152, which held that the hypothyroidism rating criteria under 38 C.F.R. § 4.119, DC 7903 does not require successive rating criteria in order to achieve a higher disability rating, and the Board must consider 38 C.F.R. §§ 4.7 and 4.21 when adjudicating a claim.

Based on the foregoing evidence and resolving reasonable doubt in favor of the Veteran, the Board finds that an increased initial rating of 30 percent for the hypothyroidism is warranted for the entire rating period from June 1, 2007, as a 30 percent disability rating recognizes the hypothyroidism has manifested in continuous medication required for control, fatigability, and constipation. The lay and medical evidence of record shows that the hypothyroidism was diagnosed during service, and has been continuously treated with a daily dose of 200 mcg. of Synthroid to control symptoms as early as August 2004, and laboratory results since then have all reflected thyroid function within normal limits, with the possible exception of the September 2007 VA examination results that showed free T4 levels were on the high end of normal. Neither the September 2007 VA examiner, the March 2014 VA examiner, nor Dr. K. have directly attributed any symptoms to the hypothyroid disability, and have generally indicated that such symptoms have been controlled by a daily dose of 200 mcg. of Synthroid. Nonetheless, service treatment records from August 2004, September 2005, as well as private medical records from Dr. K. as recently as September 2013, indicate that the Veteran still experienced some symptoms of fatigability and constipation despite treatment of the hypothyroidism with Synthroid. Although the competent and credible evidence of record only establishes two of the three criteria for a 30 percent disability rating under DC 7903 for hypothyroidism, namely fatigability and constipation but without mental sluggishness, in consideration of 38 C.F.R. §§ 4.7, 4.21 and the Court's decision in Tatum, the Board concludes that an increased disability rating of 30 percent for the entire initial rating period from June 1, 2007 is warranted.

When viewing the disability picture as a whole, the Board finds that the lay and medical evidence of record shows the Veteran's hypothyroidism symptoms do not meet or more nearly approximate the criteria for a rating in excess of 30 percent under DC 7903 at any time during the initial rating period. As discussed above, the Veteran's reported symptoms of fatigability, constipation, and the need for continuous medication required for control are supported by contemporaneous service treatment records and private medical records. On the other hand, the Veteran's other reported symptoms of memory loss, depression, difficulty breathing, and swelling conveyed in Dr. K.'s July 2014 letter are contrary to the Veteran's contemporaneous report of symptoms reflected in service treatment records, and are not supported by post-service medical records. Dr. K. also did not indicate whether the Veteran's service treatment records had been reviewed prior to writing the July 2014 letter.

The Veteran has only recently asserted symptoms of memory loss, mental slowness/slowing of thought and depression (criteria in each of the higher 60 percent and 100 percent ratings under DC 7903) in the context of supporting the claim for an increased initial disability rating in excess of 10 percent for hypothyroidism, and such assertions are not persuasive, as they are outweighed by the other, more contemporaneous, lay and medical evidence of record. See Charles v. Principi, 16 Vet. App. 370 (2002). Service treatment records are replete with instances where the Veteran affirmatively denied symptoms of depression, memory loss, and difficulty breathing, including on the February 2007 Report of Medical History completed in conjunction with the service separation examination where the Veteran denied symptoms of shortness of breath, loss of memory, amnesia, and depression. Similarly, post-service private treatment records from Dr. K. are absent for any complaints of loss of memory, amnesia, or depression, and on the contrary reflect numerous examination notes finding the Veteran to be alert and oriented. The only instances when the Veteran had reported symptoms of memory loss, mental slowness/slowing of thought and depression are in lay and medical statements submitted to VA in support of the claim for an increased disability rating, during the January 2010 DRO hearing, and during the September 2007 and March 2014 VA examinations.

The September 2007 VA examination report shows that the Veteran denied current symptoms, and that the hypothyroidism was being controlled by Synthroid with no side effects. Based on the history of the hypothyroidism obtained from the Veteran, the VA examiner provided that when the hypothyroidism was active, symptoms included excess weight, emotional irritability, memory loss and recall; however, upon a physical examination of the Veteran, the VA examiner found no signs of malaise and noted the Veteran appeared well developed and well nourished. Similarly, during the March 2014 VA examination, the Veteran reported hypothyroid symptoms such as mental slowness and weight gain; however, as more fully discussed below, the VA examiner opined that it was less likely than not that the reported symptoms were the result of the hypothyroidism and more likely due to the Veteran's other health conditions.

While the Veteran has gained weight (a criteria for a 60 percent rating under DC 7903) at times during the initial rating period, the evidence does not demonstrate that these symptoms have been constant or resulted in changes to the thyroid medication dosage during the initial rating period from June 1, 2007. Service treatment records and private treatment records show the Veteran's prescribed dosage of Synthroid remained constant at 200 mcg. from as early as August 2004 through September 2013. The evidence also does not include any competent medical evidence linking the weight gain to the service-connected hypothyroidism. On the contrary, at the conclusion of the March 2014 VA examination, the VA examiner opined that based on the laboratory tests indicating normal thyroid function, it was less likely than not that the Veteran's weight gain and mental slowness were caused by the hypothyroidism. Instead, the VA examiner opined that the reported symptoms such as weight gain were more likely caused by the Veteran's other health conditions. In this same vein, service treatment records and private medical records show that since the Veteran began treating the hypothyroidism with a daily 200 mcg. dose of Synthroid, laboratory results have all demonstrated normal thyroid function, with the possible exception of the September 2007 VA examination results as discussed above.

Even though the Veteran has not expressly asserted symptoms of difficulty breathing and swelling are due to the service-connected hypothyroidism, pursuant to the August 2016 JMR, the Board notes that service treatment records and post-service private medical records do not reflect that the Veteran reported either symptoms in connection with the hypothyroidism disorder.

Moreover, the above claimed symptoms of hypothyroidism listed in Dr. K.'s July 2014 letter, purportedly manifested during active service but before the Veteran became a patient of Dr. K.'s, and thus was recounted in the July 2014 letter based on the Veteran's reporting of such symptoms, some of which were factually inaccurate. For these reasons, the Board finds Dr. K.'s July 2014 letter is of no probative value. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that an opinion based upon an inaccurate factual premise has no probative value). In this case, the Board is not discounting the history relied upon because of the source of the history, which includes from the Veteran, rather than treatment records; rather, the history of symptoms in and since service is inaccurate because it is inconsistent with, and outweighed by, other lay and medical evidence of record. It is the completeness and accuracy of that history that is important rather than the source of the history. See, e.g., Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that VA cannot reject a medical opinion simply because it is based on a history supplied by a veteran, but the strength of the opinion depends rather upon the accuracy of the facts asserted by the veteran); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (stating that review of the claims file is not a talisman).

The Board has also considered the Veteran's self-reported hypothyroidism symptoms, made in various lay statements during the initial rating period from June 1, 2007, as well the February 2013 lay statement from the Veteran's wife. Both the Veteran and the Veteran's wife have attributed symptoms such as constipation, hair loss, muscular aching and weakness, weight gain, slowing of thought and emotional instability to hypothyroidism. The Veteran and his wife are competent to report symptoms such as constipation, hair loss, muscular aching and weakness, weight gain, slowing of thought, and emotional instability, as each of these symptoms may be detected by the Veteran's own senses or his wife's observations and reports to her by the Veteran. See Layno, 6 Vet. App. 465.

The Board finds, however, that neither the Veteran nor the Veteran's wife is competent to link any of these symptoms to hypothyroidism. See 38 C.F.R. § 3.159(a)(1); Clyburn v. West, 12 Vet. App. 296, 301 (1999) (medical evidence is not required to demonstrate chronic knee symptoms in service and continuity of symptoms after service; but a lay veteran is not competent to relate currently diagnosed chondromalacia patellae or degenerative joint disease to the continuous post-service knee symptoms); King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2009) (holding that it was not erroneous for the Board to find that a lay veteran claiming service connection for a back disorder and his wife lacked the "requisite medical training, expertise, or credentials needed to render a diagnosis" and that their testimony "could not establish medical causation nor was it a competent opinion as to medical causation"). In this case, attributing symptoms to a complex disease such as hypothyroidism requires detailed understanding of the thyroid gland and endocrine system, experience in identifying hypothyroidism symptoms, and the ability to identify and differentiate potential causes for symptoms such as constipation, hair loss, muscular aching and weakness, weight gain, slowing of thought, and emotional instability, all of which may be affected by different factors and body systems. As neither the Veteran nor the Veteran's wife have been shown to have such medical knowledge, experience, or ability, their statements relating symptoms such as constipation, hair loss, muscular aching and weakness, weight gain, slowing of thought, and emotional instability to hypothyroidism are not afforded probative weight.

Further, the Board finds that the lay statements asserting muscular aching and weakness as a symptom of hypothyroidism are not persuasive, as such assertions are contrary to the contemporaneous medical evidence of record. Service treatment records and post-service private medical records are replete with instances where the Veteran's motor strength, sensory, and reflex functions were found to be normal upon physical examination. Most recently, private medical records from March 2012 reflect that the Veteran's muscle strength was evaluated to be "5/5" in all muscle groups.

The Board has also considered the Veteran's statements questioning the adequacy and accuracy of the VA examinations. As to the September 2007 VA examination, the Veteran has asserted that the VA examiner did not accurately record the self-reported medical history provided by the Veteran. Specifically, the Veteran denied reporting that the hypothyroidism was in remission and, as proof, referenced the QTC medical questionnaire wherein he affirmed active hypothyroidism and reported constipation as a symptom. In a November 2008 Statement in Support of Claim, the Veteran also stated that he told the VA examiner that he experienced mental sluggishness, difficulties in concentration, and anger issues due to difficulties in finding the appropriate dosage of medication to manage the hypothyroidism.

Upon review of the September 2007 VA examination report, the Board notes that the September 2007 VA examiner specifically wrote that the history for hypothyroidism was obtained from the Veteran. The Board also observes that the medical history noted by the examiner is essentially consistent with other evidence of record. Specifically, the Veteran's service treatment records reflect that the Veteran began treatment for hypothyroidism in 2003 and was noted to be asymptomatic on 200 mcg. of Synthroid daily in July 2005. In September 2005, it was noted that the most recent lab results for hypothyroidism were within normal limits. At the time of the February 2007 service retirement examination, hypothyroidism was noted to be under good control with medication, and the Veteran articulated no complaints of any symptomatology believed to be related to hypothyroidism, as stated above. At the August 2007 VA medical examination, the Veteran reported treatment with Synthroid 100 mcg. two tablets daily (200 mcg.) with no side effects. The service treatment records, as well as the evidence shortly after service, indicate that hypothyroidism had existed since 2003 and was currently being controlled adequately with medication without any symptoms or side effects. 

As the noted medical history is consistent with other evidence of record and would not have been obtained by a source other than the Veteran, the Board does not find the Veteran's assertion that the September 2007 VA examiner misreported the symptomatology at the time of the medical examination to be credible. Although the Veteran reported having certain symptomatology on the September 2007 QTC questionnaire that he believed was attributable to hypothyroidism, the Board finds that the Veteran, in fact, provided a different account of the symptomatology believed to be experienced due to hypothyroidism at the September 2007 VA examination. 

There is no indication that the medical examination is not adequate despite the inconsistent statements from the Veteran regarding his experienced symptomatology (or lack thereof). Significantly, the September 2007 VA examiner based the conclusion that the Veteran's hypothyroidism was in remission on physical examination of the Veteran and laboratory findings, in addition to the Veteran's reported history. There were no objective findings to show current symptoms of hypothyroidism. Furthermore, the Board finds the September 2007 VA examination report, which was based on both subjective and objective factors and does not support the Veteran's assertion that he experienced current hypothyroidism symptomatology such as mental sluggishness/disturbance, to be more credible, so affords it far greater probative weight than the Veteran's inconsistent lay account regarding purported symptoms he believes are attributable to hypothyroidism. As discussed above, the Veteran and his wife, while competent to report his symptomatology, are not competent to attribute that symptomatology to the diagnosis of hypothyroidism. The Veteran's inconsistent accounts of hypothyroidism symptomatology undermine the credibility of such reported histories and symptoms that were made for compensation purposes. 

The Veteran has also disputed the adequacy of the March 2014 VA examination in a letter to VA dated June 2014. Specifically, the Veteran asserts that the March 2014 VA examiner either misunderstood or misinterpreted how often the Veteran had failed to take the prescribed daily hypothyroidism medication. The Veteran did not point out, however, that the March 2014 VA examiner clearly noted that the basis for the medical opinion was laboratory test results showing normal thyroid function despite current complaints of slowing of thought and weight gain, which suggests that those symptoms were not present due to abnormal thyroid levels. The March 2014 VA examiner also noted that medication had generally been consistently taken as prescribed over the previous two years. The Board also notes that the medication history in the March 2014 VA examination report is essentially consistent with other evidence of record. For example, the Veteran testified at the January 2010 DRO hearing that there have been occasions when he ran out of medicine and it would be a day or two before he was able to get more. Additionally, Dr. K.'s July 2014 letter similarly stated that the Veteran had inadvertently run out of medication on occasion, and when the Veteran ceased taking the prescribed medication certain symptoms would begin to reappear "after a short period of time, [in] as little as a week." Given that the above treatment history in the March 2014 VA examination report is consistent with other evidence of record provided by the Veteran, the Board does not find the Veteran's assertion that the March 2014 VA examiner misrepresented the Veteran's medication history to be credible.

As discussed in detail above, the competent and credible evidence of record does not establish the Veteran's claimed hypothyroidism symptoms of muscular weakness, mental disturbance (dementia, slowing of thought, depression), weight gain, or mental sluggishness. Furthermore, the lay and medical evidence of record does not indicate other possible symptoms related to hypothyroidism such as cold intolerance, cardiovascular involvement, bradycardia, or sleepiness. Thus, the Board finds that the weight of the evidence is against the assignment of an initial disability rating for hypothyroidism under DC 7903 that is in excess of 30 percent.

Extraschedular Consideration

The Board has considered whether referral for extraschedular consideration is warranted. An extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2016); see Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the Board must determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether the veteran's disability picture requires the assignment of an extraschedular rating.

Turning to the first step of the extraschedular analysis, the Board finds that all the symptomatology and impairment caused by the service-connected hypothyroidism disability are specifically contemplated by the schedular rating criteria, and no referral for extraschedular consideration is required. As stated above, the Veteran's hypothyroidism is controlled by continuous medication. The 10 percent rating under Diagnostic Code 7903 specifically considers hypothyroidism that requires continuous medication for control and manifests fatigability, and the 30 percent rating specifically considers hypothyroidism that manifests fatigability and constipation; therefore, the Board finds that manifestations of the Veteran's disability are fully contemplated in the increased 30 percent rating under Diagnostic Code 7903. For these reasons, the Board finds that the schedular criteria are not inadequate to rate the Veteran's hypothyroidism, and referral for consideration of extraschedular rating is not necessary.

Under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the rating of the individual conditions fails to capture all the service-connected disabilities experienced; however, in case, the Veteran has not asserted, and the evidence of record does not suggest, any such combined effect of multiple service-connected disabilities to create such an exceptional circumstance. For these reasons, the Board finds that the schedular rating criteria are adequate to rate the service-connected hypothyroidism, and referral for consideration of extraschedular rating is not required.

The schedule is intended to compensate for average impairments in earning capacity resulting from service-connected disability in civil occupations. 38 U.S.C.A. § 1155. "Generally, the degrees of disability specified [in the rating schedule] are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." 38 C.F.R. § 4.1 (2016). In this case, the problems reported by the Veteran are specifically contemplated by the criteria discussed above, including the effects on daily life. In the absence of exceptional factors associated with the hypothyroidism, the Board finds that the criteria for submission for assignment of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995). 

Moreover, the Board has considered whether the issue of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) was reasonably raised by the record in this case. In this case, neither the Veteran nor the evidence suggests unemployability due to service-connected disability. Rice v. Shinseki, 22 Vet. App. 447 (2009). The Veteran has not asserted that he was totally unemployable as the result of the service-connected hypothyroidism, and the evidence indicates that the Veteran has continued to work full-time during the pendency of the appeal. Accordingly, the Board concludes that a claim for entitlement to a TDIU has not been raised by the record.


ORDER

An initial disability rating of 30 percent, and no higher, for hypothyroidism, for the entire initial rating period from June 1, 2007, is granted, subject to the laws and regulations governing the payment of monetary benefits.




____________________________________________
A. C. MACKENZIE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs